UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
UNITED STATES OF AMERICA

       -against-                                                  Case No. 08-cr-223 (NG)

HUGO LLANOS-VANEGAS,

                Defendant.
--------------------------------------------------------x

## MEMORANDUM IN AID OF SENTENCING

LAW OFFICES OF ADAM D. PERLMUTTER, P.C.
260 Madison Avenue, Suite 1800
New York, New York 10016
Tel: (212) 679-1990
Fax: (212) 679-1995
Counsel for Defendant Hugo Llanos-Vanegas

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
UNITED STATES OF AMERICA

       -against-                                           Case No. 08-cr-223 (NG)

HUGO LLANOS-VANEGAS,

             Defendant.
--------------------------------------------------------x

## MEMORANDUM IN AID OF SENTENCING

### Introduction

Defendant Hugo Llanos-Vanegas hereby submits this Memorandum in Aid of Sentencing in the above captioned matter. Although the Pre-sentence Investigation Report ("PSR") provides a great deal of information about Mr. Llanos-Vanegas's personal history (including his family, education and employment background) – as well as information relevant to the instant offense and sentencing – we hereby submit this Memorandum as a supplement to the information reported in the PSR. We hope that following review of this submission, the Court will agree that a minimum sentence of time served is appropriate under the circumstances of this case.

### Relevant Procedural Background

On July 11, 2011, Mr. Llanos-Vanegas pled guilty to Count One of the indictment in this case. Specifically, Mr. Llanos-Vanegas pled guilty, pursuant to a plea agreement, to one count of conspiracy to distribute and possess with intent to distribute cocaine in violation of 21 U.S.C. § 846(b)(1)(A).

By entering his plea, Mr. Llanos-Vanegas has accepted responsibility for his unlawful conduct and acknowledged that what he did was wrong. He incarcerated in the infamous *Combita* prison since his arrest in Colombia on May 21, 2008. Mr. Llanos-Vanegas was extradited to the United States over more than a year later on September 30, 2009. Through his plea, Mr. Llanos-Vanegas has sought to avoid any further litigation in this matter and seeks to move forward with his life. He is prepared to accept the sentence to be imposed by the Court and sadly understands the consequences that will flow from that sentence. For the reasons stated herein, we respectfully believe that a sentence of time served is appropriate given, *inter alia*, his advanced age, health, elderly and frail mother, lack of prior criminal record, safety-valve status, and the horrible pretrial conditions that Mr. Llanos-Vanegas endured while awaiting extradition from Colombia.

## Personal Background

**A.     Family Background**

The PSR accurately records Mr. Llanos-Vanegas's family background. Mr. Llanos-Vanegas is 58 years old, born July 25, 1953, in Cali, Colombia. He is one of four children born to the marital union of Hugo Llanos Restrepo and Alba Lucia Vanegas. Mr. Llanos-Vanegas was raised under low to middle-income circumstances and did not suffer any form of abuse in his childhood. His father was employed as a city bus driver in Colombia until he passed away from natural causes in 2005. Mr. Llanos-Vanegas's mother is 82 years old and resides in Cali, Colombia. She is a homemaker who is being supported by her children. Mr. Llanos-Vanegas's mother suffers from osteoporosis.

All three of Mr. Llanos-Vanegas's siblings reside in Colombia. They are in good health and are all gainfully employed. Mr. Llanos-Vanegas reported that he has a good

relationship with all of his family members. They are aware of his arrest for the instant offense and remain supportive of him.

Mr. Llanos-Vanegas came alone to the United States in 1986 in order to pursue employment opportunities. After two years he returned to Colombia. He returned to the United States in 2004 and resided in Miami, Florida for one year. He has resided in Colombia since he returned there in 2005. The PSR states that according to ICE, Mr. Llanos-Vanegas does not have legal status in the United States. Mr. Llanos-Vanegas is, in fact, a legal permanent resident of the United States and received his green card in 1986.

Mr. Llanos-Vanegas has had a romantic relationship with Paola Andrea Roa for eighteen years. He describes their relationship as "super." Ms. Roa is a 34-year-old waitress who resides in Cali, Colombia. Mr. Llanos-Vanegas and Ms. Roa have one child together; C.L.R. C.L.R. is a full-time student and has no health problems. Prior to his arrest for the instant offense, Mr. Llanos-Vanegas resided with Ms. Roa at her mother's home.

Mr. Llanos-Vanegas has five other children from previous relationships. He has three children with Luz Marina Giron, with whom he had a twelve-year relationship. Jenny Llanos, age 32, Diego Felipe Llanos, age 26, and Stefanie Llanos, age 21, all live and work near Miami and Orlando, Florida. Mr. Llanos-Vanegas's relationship with their mother ended when he met another woman. However, Mr. Llanos-Vanegas and Ms. Giron have maintained an amicable relationship and he continued to support their children financially following the dissolution of their relationship.

Mr. Llanos-Vanegas has two children with Monica Andrioli, with whom he also had a twelve-year relationship. Carlos Adrian Llanos, age 23, and Priscilla Llanos, age 20, both reside near Fort Lauderdale and Miami, Florida. Priscilla works part-time and attends college. Carlos suffers from Down syndrome and lives in an adult care facility. Mr. Llanos-Vanegas's relationship with their mother ended because they had "difficulty understanding one another." Mr. Llanos-Vanegas continued to support his children following his separation from their mother. He has not had contact with Ms. Andrioli for a number of years but he maintains contact with his children, including his Downs child Carlos.

B.   **Educational Background & Vocational Skills**

Mr. Llanos-Vanegas received his high school diploma in Cali, Colombia by attending school at night. He reported that he was an average student and received good grades. Mr. Llanos-Vanegas's primary language is Spanish. He has no military experience.

C.   **Employment Background**

Mr. Llanos-Vanegas has had steady employment for the past twenty years. From 2000 until his arrest, except for the time he spent in Miami, Florida, Mr. Llanos-Vanegas operated a small taxi company in Cali, Colombia with the assistance of his sister and brothers. His siblings continue to run the business in his absence. The company has three taxicabs, one of which Mr. Llanos-Vanegas operated on his own. The company earned approximately $500-$600 per month, per taxi, prior to his arrest. Mr. Llanos-Vanegas is uncertain of the business' earnings since his incarceration. Mr. Llanos-

Vanegas did not work while he was in the United States from 2004 to 2005. During that time, his father in law supported Mr. Llanos-Vanegas and his wife.

From 1990 to 2000, Mr. Llanos-Vanegas operated a small city bus company in Cali, Colombia. He owned several buses and managed their routes and operations. Mr. Llanos-Vanegas could not recall his earnings from this employment but remembers that it was varied. He ended this business in order to start the taxi business with his family.

**D.     Substance Abuse History**

Mr. Llanos-Vanegas reported using cocaine on a recreational basis from the ages of 32 to 38. He stated that "a friend turned [him] on to it," but at the age of 38, he decided to quit using cocaine. Mr. Llanos-Vanegas did not attend formal treatment and was able to stop using cocaine on his own. He reports that he does not consume alcohol and has never used any other illicit substances.

**E.     Mental and Emotional Health**

Mr. Llanos-Vanegas reported no history of any mental health or emotional health problems or treatment.

**F.     Physical Condition**

Mr. Llanos-Vanegas suffers from osteoarthritis. He currently takes ibuprofen and acetaminophen for pain although he reported that it "doesn't help." Medical records from the Metropolitan Detention Center ("MDC") confirm this information. In addition, he suffers from chronic back pain resulting from a birth defect of one leg being shorter than the other.

G.  **Financial Condition: Ability to Pay**

An Equifax inquiry revealed that Mr. Llanos-Vanegas has two accounts in collections totaling over $92,000. Approximately $91,600 of that debt is owed for child support. The City of New York obtained the child support judgment. Apparently, while living in Colombia, Monica Andrioli abandoned Mr. Llanos-Vanegas and came to the United States. Ms. Andrioli immediately sought and obtained welfare benefits. Ms. Andrioli and the children were U.S. citizens, so it was easy to obtain benefits. Mr. Llanos-Vanegas was unaware that she had applied for benefits. The City of New York commenced a child support action against Mr. Llanos-Vanegas while he still in Colombia. Mr. Llanos-Vanegas insists that he always supported his children, including Carlos and Priscilla, who were the subject of the action brought by the City.

Further inquiries revealed that Mr. Llanos-Vanegas has no assets, liens or judgments. He had several federal tax liens filed against him by the Internal Revenue Service throughout the 1990s and early 2000s; however, all of those liens were released on May 6, 2003. Those liens totaled approximately $32,000. Based on this information, the PSR states that it appears that Mr. Llanos-Vanegas is unable to pay a fine.

H.  **Other Considerations**

Mr. Llanos-Vanegas was incarcerated in the infamous *Combita* prison in Colombia while awaiting extradition on this present case. Annexed hereto as Exhibits A and B are articles and reports, respectively, detailing the poor conditions at *Combita* prison. The facility lacked food, water and the most basic medical services. Mr. Llanos-Vanegas and other prisoners were housed in outdoor open-air areas. Mr. Llanos-Vanegas was incarcerated for 16 months under these inhumane conditions.

The poor conditions in *Combita* prison have also been recently documented by the United States Department of State's Bureau of Democracy, Human Rights and -7-Labor, in a report dated March 11, 2008. Specifically, the State Department's Country Report on Human Rights Practices noted the lack of potable water and vermin infestation in the facility. The report notes:

> An October report by the Inspector General's Office on Combita Prison found violations of health standards, such as a lack of potable water and a proliferation of insects and rodents. [The Colombian National Prison Institute] spent $2.23 dollars (4,459 pesos) per day on each inmate for food. Private sources continued to supplement food rations of many prisoners.

*See* http://www.state.gov/g/drl/rls/hrrpt/2007/100633.htm.

### Justification for a Minimum Sentence

As his personal background indicates, Mr. Llanos-Vanegas is a person of modest origins. Unfortunately, Mr. Llanos-Vanegas did not follow a law-abiding path and became susceptible to influences that led him to his current circumstances. Despite this error in judgment, it is respectfully submitted that based on Mr. Llanos-Vanegas's character and background, there are several reasons that warrant the imposition of a minimum sentence of time served.

Mr. Llanos-Vanegas has accepted responsibility for his crime by pleading guilty to Count One of the indictment in this case on July 11, 2011. Mr. Llanos-Vanegas has been in custody on this case for over 4 years, since his arrest in Colombia on May 21, 2008. He was extradited to the United States approximately 3 years ago on September 30, 2009. Mr. Llanos-Vanegas has been a model prisoner during his housing at the MDC.

In some circumstances, rehabilitation between arrest and sentence can warrant the imposition of a minimum sentence. *See e.g. United States v. Maier,* 979 F.2d 944 (2d Cir 1992) (successful drug rehabilitation between conviction and sentence is a basis for minimum sentence); *United States v. Workman,* 80 F.3d 688 (2d Cir. 1996) (abandonment of criminal lifestyle for reformed lifestyle – between time of arrest and sentence – is a basis for minimum sentence); *United States v. Core,* 125 F.3d 74 (2d Cir 1997) (minimum sentence permitted based upon rehabilitation efforts). We believe that the same circumstances warrant a minimum sentence in the present case.

### The PSR and Its Calculation of the Applicable Sentencing Guidelines

As indicated above, Mr. Llanos-Vanegas has pled guilty to one count of conspiracy to distribute and possess with intent to distribute cocaine in violation of 21 U.S.C. § 841(b)(1)(A)(ii)(II). In light of the foregoing, Probation has prepared a sentencing guideline calculation indicating that Mr. Llanos-Vanegas's total offense level is 29. *See* PSR ¶ 49. According to this calculation, Mr. Llanos-Vanegas receives a Base Offense Level of 34 for violation of 21 U.S.C. § 846 and 841 (b)(1)(A). *See* PSR ¶ 42. The PSR recommends that Mr. Llanos-Vanegas is eligible for a two-level reduction under the safety-valve guideline, pursuant to U.S.S.G. § 2D1.1(b)(16). *See* PSR ¶ 43. There is no adjustment for obstruction of justice. *See* PSR ¶¶ 39 and 46. The PSR recommends an adjustment of his offense level by a total reduction of 3 for the acceptance of responsibility (U.S.S.G. §3E1.1(a) and (b)). *See* PSR ¶ 48.

**A.     The Adjustment for Acceptance of Responsibility Should Apply in this Case**

The PSR's calculation of the Sentencing Guidelines includes a 3-point adjustment for acceptance of responsibility pursuant to U.S.S.G. §3E1.1(a) and (b). *See* PSR ¶ 48.

Following my appearance in this matter, Mr. Llanos-Vanegas indicated that he wanted to plead guilty in advance of trial. By entering his plea, Mr. Llanos-Vanegas has, *inter alia*, waived his right to a trial and to have the Government prove its case against him beyond a reasonable doubt. Mr. Llanos-Vanegas's willingness to give up his trial rights is indicative of acceptance of responsibility. Further, he pled guilty in a timely fashion and thereby saved the Government the significant cost of going to trial. To the extent that he did plead guilty, and thereby ensured that the Government avoided the cost and expenditure of resources, Mr. Llanos-Vanegas should receive the benefit of an adjustment for acceptance of responsibility.

Based upon the foregoing, and for all the reasons set forth in this Memorandum, it is respectfully urged that the Court apply the 3-point adjustment, pursuant to U.S.S.G. §3E1.1(a) and (b) for acceptance of responsibility in this matter.

**B.     Defendant Should Receive 2-level Reduction Pursuant to Safety Valve**

Mr. Llanos-Vanegas submits that he should also receive a 2-level reduction pursuant to U.S.S.G. §5C1.2(1-5). He has no criminal history points and the PSR recommends he be categorized as a Criminal History Category I. Mr. Llanos-Vanegas did not use violence or threats of violence or possess a firearm or other dangerous weapon in connection with the offense. The offense did not result in death or serious injury to any person. Mr. Llanos-Vanegas was not an organizer, leader, manager or supervisor of others in this offense and he was not engaged in an ongoing criminal enterprise. Mr. Llanos-Vanegas was truthful during his safety-valve proffer with the government regarding his involvement in this offense. Accordingly, he should receive a two-point adjustment pursuant to U.S.S.G. §5C1.2(1-5).

### C. Defendant Should Receive a Non-Guidelines Sentence Based on His Detention Prior to Extradition

Mr. Llanos-Vanegas was incarcerated at *Combita* prison in Colombia for sixteen months before he was extradited to the United States. He respectfully submits that his detention under the documented inhumane conditions at *Combita* warrant a sentence of time served in this case. In *U.S. v. Carty*, the Court found that "pre-sentence confinement conditions may in appropriate cases be a permissible basis for downward departures." 264 F.3d 191, 196 (2d Cir. 2001). "[O]ther district court judges have invoked the unusually difficult conditions in the *Combita* prison in granting downward departures." *United States v. Naranjo-Ramirez*, 402 Fed.Appx. 576 (2d Cir. 2010) *citing* United States v. Torres, No. 01 CR 1078, 2005 (S.D.N.Y. Aug. 30, 2005). We respectfully submit that the conditions Mr. Llanos-Vanegas endured in *Combita* prison warrant a non-guidelines sentence.

### D. Other Enhancements Not Applicable

The PSR makes a specific finding that Mr. Llanos-Vanegas is not subject to the 2-point enhancement for obstruction of justice pursuant to U.S.S.G. §3C1.1. *See* PSR ¶¶ 39 and 46. Based upon the foregoing, we respectfully urge that the Court has no basis in the present record for applying a 2-point enhancement, pursuant to U.S.S.G. §3C1.1, for obstruction of justice in this matter. The PSR finds that there is no basis for a Victim-Related Adjustment. *See* PSR ¶¶ 44. The PSR also find that there is no basis for a Role in the Offense Adjustment because Mr. Llanos-Vanegas did not take direction from or give direction to any other members of the organization. *See* ¶¶ 18 and 45.

**Offense Level Computation Sentence**

For the reasons set forth herein, we concur with the PSR's calculation of the applicable sentencing guidelines although we do not believe they should dictate Mr. Llanos-Vanegas's sentence:

| | |
|---|---:|
| Base Offense Level [U.S.S.G. §§ 2D1.1(a)(5) and (c)(3)] | 34 |
| Specific Offense Characteristic [U.S.S.G. § 2D1.1(b)(16)] | -2 |
| Adjustment for Obstruction of Justice | 0 |
| Adjustment for Acceptance of Responsibility [U.S.S.G. § 3E1.1(a) and (b)] | <u>-3</u> |
| Total Offense Level | 29 |

It is respectfully submitted that Mr. Llanos-Vanegas is properly classified as a Criminal History Category I. He has no prior contacts with the criminal justice system. He therefore has no criminal history points. With the recommended Criminal History Category I, the guideline range of imprisonment is 87-108 months. *See* PSR ¶ 77. Mr. Llanos-Vanegas has been incarcerated for over 4 years on this case since he was arrested in Colombia on May 21, 2008. We respectfully submit that Mr. Llanos-Vanegas should receive a credit for time for the time he served at *Combita* prison in Colombia on a greater than 1:1 basis due to the horrific conditions in that facility, especially since his incarceration was part of the present case.

In addition to the foregoing, the Guidelines, "formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence." *Kimbrough v. United States*, 552 U.S. 85, 90 (2007); *see also Gall v. United States*, 552 U.S. 38, 59 (2007). "The statute, as modified by *Booker*, contains an overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than

necessary,' to achieve the goals of sentencing." *Kimbrough*, 552 U.S. at 101 (*citing* 18 U.S.C. § 3553[a]); *United States v. Booker*, 543 U.S. 220 (2005). Because the "Guidelines are not the only consideration," the Court, "after giving both parties an opportunity to argue for whatever sentence they deem appropriate," "should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party." *Gall*, *supra* at 49-50.

A court must independently evaluate the appropriate sentence in light of the § 3553(a) purposes and factors, and must consider arguments that the Guidelines should not apply on general policy grounds, case-specific grounds (including Guideline-sanctioned departures), or "regardless." [1] *Rita v. United States*, 551 U.S. 338, 347-351

---

[1] 18 U.S.C. § 3553(a) provides, in pertinent part:

> The court shall impose a sentence sufficient, but not greater than necessary…. The court, in determining the particular sentence to be imposed, shall consider—
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for—
>
> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
>
> \* \* \*
>
> (5) any pertinent policy statement—

(2007). In doing so, the judge "may not presume that the Guidelines range is reasonable." *Gall*, 552 U.S. at 50; *see also Rita*, *supra* at 351; Transcript of Oral Argument at 50, *Rita v. United States*, 551 U.S. 338 (2007) (No. 06-5754); Transcript of Oral Argument at 32-33, *Claiborne v. United States*, 127 S. Ct. 2245 (June 4, 2007) (No. 06-5618). If the Court decides that a sentence outside of the Guidelines is warranted, then the Court "must consider the deviation and ensure that the justification is sufficiently compelling to support the degree of variance." *Gall*, 552 U.S. at 50. "Extraordinary circumstances" are not required to justify a sentence outside of the Guidelines range. *Id*. at 47.

Of great importance is the fact that district court judges must now consider and respond to non-frivolous arguments that the Guideline sentence itself reflects an unsound judgment because it fails to properly reflect § 3553(a) considerations, does not treat defendant characteristics in the proper way, or a different sentence is appropriate regardless. *Rita*, 551 U.S. at 357. District courts are no longer required, or permitted, to simply defer to Commission policies. *Id*. Appellate courts may not "grant greater fact finding leeway to [the Commission] than to [the] district judge." *Id*. at 347. Even the government has "acknowledge[d] that . . . 'courts may vary [from Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines.'"

---

(A) issued by the Sentencing Commission…subject to any amendments made to such policy statement by act of Congress

\* \* \*

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

*Kimbrough*, 552 U.S. at 101.

For the reasons stated in this Memorandum, we respectfully believe that a non-guidelines sentence of time-served is appropriate and reasonable under the circumstances of this case. Mr. Llanos-Vanegas has been incarcerated for over 4 years, since his arrest in Colombia on May 21, 2008. He has been a model prisoner during his housing both in Colombia and at the MDC. Mr. Llanos-Vanegas has accepted responsibility for his actions by pleading guilty.

Mr. Llanos-Vanegas respectfully submits that a sentence of time served is appropriate in this case because he has been sufficiently punished through his incarceration in Colombia and in the United States. Prior to his extradition, Mr. Llanos-Vanegas was incarcerated in *Combita* prison for approximately sixteen months. During that time, he endured horrific conditions including non-potable water, lack of medical care and substandard nutrition. Mr. Llanos-Vanegas has been incarcerated in the United States since September 30, 2009 – almost three years as of the date of sentencing. He has been held in custody on this matter both in the United States and Colombia for over four years. Throughout this time he has caused suffering and concern to his family. He is an elderly individual whose incarceration to date has been sufficient to punish him for his crime. He also has an elderly, infirmed mother for whom he wishes to care for in Colombia. Mr. Llanos-Vanegas has been a model prisoner both in Colombia and the United States is evidence that he does not pose a threat to society, that he is reformed and rehabilitated, and that he should be returned to Colombia and his family to resume a law abiding life despite his past error.

It is respectfully submitted that a minimum sentence in this case would be appropriate in light of the factors set forth in 18 U.S.C. § 3553(a) because of the nature and circumstances of the offense and the history and characteristics of this defendant. We pray that the Court sentences him to the requested minimum sentence of time served because it is fair and appropriate under the circumstances of this case.

## CONCLUSION

For all the foregoing reasons, defendant requests that the Court impose a sentence of time served.

Dated:   New York, New York
         June 7, 2012

                                              Law Offices of Adam D. Perlmutter, P.C.

                                              By: _____
                                                   Adam D. Perlmutter
                                                   Jennifer R. Louis-Jeune

                                              260 Madison Avenue, Suite 1800
                                              New York, NY 10016
                                              Tel. (212) 679-1990
                                              Fax (212) 679-1995
                                              adp@adplegal.com
                                              Counsel for Defendant Hugo Llanos-Vanegas